IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHIRLEY M. GREEN, et al.          :
                                  :
    v.                            :    Civil Action No. DKC 12-1040
                                  :
WELLS FARGO BANK, N.A.            :
                                  :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this consumer lending action is the motion to dismiss filed by Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant"). (ECF No. 36). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted.

**I.  Background**

The facts of this case as alleged in the first amended complaint were described in full in a prior opinion, thus only a brief background of the underlying factual and procedural issues in the case is necessary. *See Green v. Wells Fargo Bank, N.A.*, 927 F.Supp.2d 244 (D.Md. 2013). Plaintiffs Shirley M. Green, Ralph E. Green, and Antoinette Green took out a mortgage of just under $1 million from Southern Trust Mortgage, LLC on May 31,

2006 to finance their purchase of a home.[1] Defendant subsequently acquired servicing rights to the loan. Plaintiffs fell behind on their mortgage payments in October 2010 and contacted Wells Fargo in late March or early April 2011 to inquire about a loan modification. (ECF No. 24 ¶ 18). Plaintiffs assert that Wells Fargo represented that it would process their loan modification request and perform a loss mitigation analysis, provided Plaintiffs submitted documentation in connection with their request within ten days from the letter, dated April 8, 2011.[2] (ECF No. 24-1 ¶ 20.1). Plaintiffs concede that they did not timely submit all of the required documentation; instead, they submitted the documentation on May 24, 2011, over a month late. Plaintiffs assert that "from May 24, 2011 forward, Wells Fargo lost or lost track of, or purposely disregarded, the documentation submitted by the Greens. Indeed, in its June 20, 2011 correspondence, Wells Fargo falsely suggested the Greens had not submitted the required documentation, when it told the Greens to resubmit documentation they had already submitted." (*Id.* ¶ 23).

---

[1] Antoinette Green is a co-borrower under the deed of trust and was added as a necessary party to the instant litigation when Plaintiffs filed an amended complaint after the case was removed from the Circuit Court for Prince George's County.

[2] The April 8, 2011 letter from Wells Fargo to Plaintiffs identified the specific documents Plaintiffs had to submit for consideration.

Plaintiffs then submitted the same and additional documents on June 29, 2011. Plaintiffs contend that Wells Fargo responded with a letter, dated November 4, 2011, which stated that the Greens had not provided any input and were nonresponsive to Wells Fargo's attempts to contact them. (*Id.* ¶ 25). The letter further advised Plaintiffs that Wells Fargo would continue to work with them to help avoid a foreclosure sale, but "if [Plaintiffs'] mortgage has been referred to foreclosure, that process moves forward at the same time. Also, as part of the foreclosure process, [Plaintiffs] may . . . see steps being taken to proceed with a foreclosure sale of [Plaintiffs'] home." (ECF No. 24-7, at 3). Plaintiffs responded to this letter on December 1, 2011, and Wells Fargo sent another letter to the Greens on December 14, 2011, requesting that the Greens call them immediately to determine available options. (*See* ECF No. 24-9).

Plaintiffs filed an initial complaint in the Circuit Court for Prince George's County on February 1, 2012. Defendant removed the action to this court on April 4, 2012. (ECF No. 1). Plaintiffs later amended the complaint on May 7, 2012, alleging violations of the Maryland Consumer Protection Act ("MPCA"), Md. Code Ann., Com. Law § 13-101 *et seq.*, common law fraud, promissory estoppel, negligence, and negligent misrepresentation. (ECF No. 24). Defendant moved to dismiss on

May 21, 2012 (ECF No. 25), and the undersigned issued a memorandum opinion and order on February 27, 2013 (ECF Nos. 33 & 34) dismissing Plaintiffs' promissory estoppel, negligence, and negligent misrepresentation claims, and dismissing the MCPA and common law fraud claims without prejudice to Plaintiffs' right to file a second amended complaint within fourteen (14) days. Plaintiffs subsequently filed a second amended complaint on March 13, 2014. (ECF No. 35). Wells Fargo moved to dismiss the second amended complaint on March 27, 2013 (ECF No. 36), and Plaintiffs opposed the motion on April 24, 2013 (ECF No. 37).

**II. Standard of Review**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

4

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Com'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (*quoting* Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Plaintiffs' claims alleging fraud and violations of the MCPA are subject to the heightened pleading standard of Rule

9(b). *See Harrison*, 176 F.3d at 783-84; *Dwoskin v. Bank of Am., N.A.*, 850 F.Supp.2d 557, 569 (D.Md. 2012). Rule 9(b) provides that, "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Such allegations typically "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F.Supp.2d 298, 313-14 (D.Md. 2000) (*quoting Windsor Assocs., Inc. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md. 1983)). In cases involving concealment or omission of material facts, however, meeting Rule 9(b)'s particularity requirement will likely take a different form. *See Shaw v. Brown & Williamson Tobacco Corp.*, 973 F.Supp. 539, 552 (D.Md. 1997) (recognizing that an omission likely "cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation" (internal quotations omitted)). The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim; to protect the defendant against frivolous suits; to eliminate fraud actions where all of the facts are learned only after

discovery; and to safeguard the defendant's reputation. *See Harrison*, 176 F.3d at 784.

**III. MCPA (Count I) and Common Law Fraud (Count II)**

The MCPA prohibits "unfair or deceptive trade practices." Md. Code Ann., Com. Law, § 13-301. The MCPA proscribes fourteen categories of unfair or deceptive practices, including "any . . . [f]alse . . . or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" and "any . . . [f]ailure to state a material fact if the failure deceives or tends to deceive."[3] Similarly, to bring a common law fraud claim in Maryland, the plaintiff must show:

> (1) that the defendant made a false representation; (2) that its falsity was either known to the defendant, or the misrepresentation was made with such reckless indifference to the truth as to be equivalent to actual knowledge; (3) that it was made for the purpose of defrauding the person claiming to be injured thereby; (4) that such person not only relied upon the misrepresentation, but had a right to rely upon it in the full belief of its truth, and would not have done the thing from which the

---

[3] As mentioned in the prior memorandum opinion, private parties who bring a suit must establish that they "suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation." (ECF No. 33, at 22 n.8). Even when a consumer decides to pursue public enforcement, "the Division must determine that the consumer relied upon the misrepresentation" before it can order a violator to pay restitution to that particular consumer." *Consumer Prot. Div. v. Morgan*, 387 Md. 125, 164 (2005).

7

> injury had resulted had not such misrepresentation been made; and (5) that such person actually suffered damage directly resulting from such fraudulent misrepresentation.

*Parker v. Columbia Bank*, 91 Md.App. 346, 359 (1992); *Gourdine v. Crews*, 405 Md. 722 (2008).

The second amended complaint alleges that Wells Fargo deceptively misled Plaintiffs by making the following false or misleading statements: (1) the statement in an April 8, 2011 letter from Wells Fargo that "our goal is to ensure you have every opportunity to retain your home" and promise to process the Greens' loan modification request if they submitted the required documentation; (2) Wells Fargo's statements after May 24, 2011 that it had not received documentation from Plaintiffs, when in fact the Greens had submitted the requested documentation; (3) Wells Fargo's statement in the November 4, 2011 correspondence that Plaintiffs had not provided any input and that Defendant made unsuccessful attempts to contact the Greens; and (4) Wells Fargo's misrepresentation in a "Final Loss Mitigation Affidavit" filed in the foreclosure proceeding in the Circuit Court for Prince George's County that the Greens omitted the signed second page from their 2009 tax returns. (ECF No. 35-1, at 14-15). The second amended complaint states that Plaintiffs detrimentally relied on these alleged misrepresentations by taking time out of their lives to complete

the applications and resubmit paperwork; requesting and attending court-ordered mediation in the state foreclosure action to explain that the full tax returns were signed and submitted; experiencing mental anguish as a result of supplying the applications and paperwork and by knowing that Defendant made false or misleading statements, "and thus insult and disrespect, and wasted time devoted to futile and tedious applications and paperwork"; generally taking time to work with Defendant. (*Id.* at 15-18). Plaintiffs assert that they reasonably relied on the alleged false or misleading statements because "Plaintiffs had no cause to distrust Defendant until the November 4, 2011 letter [], which blatantly falsely stated the Greens had supplied no input, despite voluminous faxes and other acts of working closely with Defendant," and "it was reasonable to request foreclosure mediation . . . because the Greens felt the court system could be of assistance." (*Id.* at 18-19).

The allegations in Plaintiffs' second amended complaint still do not support claims for MCPA violations and common law fraud. In the February 27, 2013 opinion, the undersigned concluded that Plaintiffs have not made a sufficient showing of damages resulting from their reliance on Defendant's promises or misrepresentations. (*See* ECF No. 33, at 24). The allegations in the second amended complaint fare no better. The undersigned held that "if Plaintiffs can show that they suffered damages as

9

a result of their reasonable reliance on the alleged misrepresentations, they could assert plausible claims for relief." (*Id.* at 30). The Maryland Court of Appeals has "established that, in order to articulate a cognizable injury under the Consumer Protection Act, the injury must be objectively identifiable. In other words, the consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 143 (2007). Actual injury or loss under the MCPA includes "emotional distress and mental anguish" provided "there was at least consequential physical injury" in the sense that "the injury for which recovery is sought is capable of objective determination." *See Hoffman v. Stamper*, 385 Md. 1, 32 (2005). "Thus, a complaint will adequately plead damages under the MCPA when it contains plausible allegations that the plaintiff relied upon the defendant's false or misleading statements and suffered actual loss or injury *as a result* of that reliance." *Butler v. Wells Fargo Bank, N.A.*, Civil Action No. MJG-12-2705, 2013 WL 3816973, at *3 (D.Md. July 22, 2013) (emphasis in original).

Here, Plaintiffs assert that they suffered mental anguish – which also manifested itself in physical symptoms – because they expended time resubmitting documents which were allegedly already provided to Wells Fargo, albeit over a month past the

10

ten-day deadline indicated in Wells Fargo's April 8, 2011 letter. But Plaintiffs acknowledge that they "would have done this even if Defendant had the intent to properly process the loan." (ECF No. 35-1, at 16). Furthermore, Plaintiffs' contention that they "knew and accepted that they were in default . . . for Plaintiffs, it was *the principle of the matter* that caused the stress to culminate in physical symptoms" also undermines that they suffered damages as a result of reasonable reliance on the alleged false representations. (*Id.* at 18) (emphasis added). Such allegations that Defendant is liable for damages caused to Plaintiffs "out of principle" are not plausible to support MCPA violations or common law fraud. Nevertheless, Plaintiffs urge that "the controlling fact of the matter is that Defendant did not have [] an intent [to process their loan modification], and had Plaintiffs known the truth of the matter . . . Plaintiffs would not have devoted said time to said activities." (*Id.*). But Plaintiffs' allegations in the second amended complaint again do *not* show that Defendants' alleged misrepresentations caused them to miss work, lose wages, or to forego any actions in connection with their foreclosure proceedings. As Defendant points out "[i]t is equally true that any alternative efforts to avoid foreclosure would have required some time and effort." (ECF No. 36-1, at 4). *See, e.g., Butler*, 2013 WL 3816973, at *6 (distinguishing cases involving

actionable MCPA claims; "[i]n each of those cases, the plaintiff had made payments under a TPP agreement or other modified plan, received inconsistent communication from the mortgage services regarding a permanent modification or loan reinstatement, and claimed to have suffered resulting injury in the form of lower credit scores, lost time at work, and emotional distress.").

The allegations in the second amended complaint contain the same deficiencies as the amended complaint, as Plaintiffs also cannot show that they reasonably relied to their detriment on any of the alleged misrepresentations. First, Plaintiffs still do not allege that Defendant specifically directed them to do, or to refrain from doing, anything that adversely affected the state of affairs that existed prior to the alleged misrepresentations. To the extent Plaintiffs maintain that Wells Fargo's communications gave them a false sense of comfort that their loan would be modified and foreclosure proceedings would be avoided, Defendant's correspondence undercuts this point. Indeed, in the December 14, 2011 correspondence, Wells Fargo advised Plaintiffs that "[e]ven though [it would] continue to work with [Plaintiffs] to help [] avoid a foreclosure sale, it's important to understand that [Plaintiffs'] mortgage has already been referred to foreclosure." (ECF No. 24-9, at 2). The letter further stated that Plaintiffs may "see steps being taken to proceed with a foreclosure sale of [their] home."

(*Id.*). The November 4, 2011 letter from Wells Fargo included a similar warning that if a mortgage has been referred to foreclosure, "the process moves forward at the same time." (ECF No. 24-7).

Furthermore, the court in *Butler* rejected the very same allegations premised on the MCPA as Plaintiffs offer here. *See* 2013 WL 3816973, at *4. Specifically, the plaintiff in that case alleged the following facts in support of the MCPA claim:

> Ms. Butler did rely to her detriment on the false or misleading statements by being lulled into a false state of comfort, taking time out of her life to submit paperwork to Wells Fargo and otherwise work closely with Wells Fargo in pursuit of the promised loan modification, and by giving up her rights to raise objections in the foreclosure action.
>
> As a direct and proximate cause of Wells Fargo's conduct, Ms. Butler suffered severe mental anguish, which manifested physically through vomiting, headaches, sleep loss, and other physical symptoms.

*Id.*

The court concluded that these allegations relating to "Butler's 'false state of comfort' and emotional distress resulting therefrom are inadequate to present a plausible claim." *Id.* Judge Garbis reasoned that:

> [w]hile Wells Fargo can be faulted for erroneous and inconsistent statements, it is hardly plausible to contend that Butler – faced with conflicting statements – could rely upon some and ignore contrary ones. . . . [a]lthough the Court must draw all

13

> reasonable inferences in favor of Butler, it is not rational to conclude that she would, or could, draw any reasonable inference other than that Wells Fargo's statements could not be relied upon to tell definitely what the status of her loan modification was.

*Id.* at *5. The same logic applies to these facts. Notably, in *Butler*, Wells Fargo made inconsistent statements to plaintiff, representing that she "qualified for the loan modification," later stating that it was still "working in good faith towards a loan workout," and then stating that Wells Fargo would respond to her loan modification request. In contrast, Plaintiffs here do not allege that Wells Fargo ever indicated that it would approve the Greens' request for a loan modification. Moreover, as Defendant points out, "the foreclosure docket reflects clearly that the foreclosure sale had not been scheduled as of the date they filed the lawsuit and the Plaintiffs had not lost any ability to assert defenses and challenges, to the extent they believed there were any, to the foreclosure." (ECF No. 36-1, at 3); *Goss v. Bank of America, N.A.*, 917 F.Supp.2d 445, 450 (D.Md. 2013) ("because they Gosses cannot show they reasonably and detrimentally relied on any of BANA's statements, the Gosses have not stated a valid MCPA or fraud claim."). The allegations in Plaintiffs' second amended complaint fail to show that they took any action *to their detriment* in reasonable reliance on Wells Fargo's statements or representations. Plaintiffs'

14

principal contention is that they "wasted their time" resubmitting paperwork and performed "tedious tasks," (ECF No. 37-1, at 4), but this does not rise to the level of damages in reasonable and detrimental reliance to be actionable under the MCPA or as common law fraud. *Butler*, 2013 WL 3816973, at *4 n.9 ("Even if Butler were still seeking damages for filling out paperwork or foregoing action in the foreclosure proceedings, the Court would dismiss these claims. . . . The Amended Complaint contains no allegations as to what action Butler would or could have taken in the foreclosure action absent the Representations and/or whether any such action could have been timely under applicable state law based upon the date of a particular Representation and occurrence in the state foreclosure proceedings.").

Plaintiffs' attempt to show detrimental reliance by having to participate in mediation in connection with the foreclosure proceedings is similarly unavailing. As Defendant argues, "[t]he defect in this theory is obvious – there was no misrepresentation made to the Plaintiffs which they justifiably relied upon to their detriment. To the contrary, Plaintiffs are alleging that they believed the representation made to the Court [in the 'Final Loss Mitigation Affidavit'] was incorrect and that they knew it was incorrect at the time it was made." (ECF No. 36-1, at 6); *see Coulibaly v. J.P. Morgan Chase Bank*, Civil

Action No. DKC 10-3517, 2011 WL 3476994, at *19 (D.Md. Aug. 8, 2011) (dismissing fraud claims arising out of HAMP process for lack of reliance, where "the complaint indicates that Plaintiff protested many of [Defendant]'s actions at every opportunity"). Furthermore, Plaintiffs have not alleged that they suffered damages as a result of having participated in mediation. In fact, Plaintiffs acknowledge that they decided to pursue mediation because they recognized the potential value in that process.

Based on the foregoing, Plaintiffs' MCPA and common law fraud claims will be dismissed.

**IV. Conclusion**

For the foregoing reasons, the motion to dismiss filed by Defendant will be granted. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge